# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| MARVIN LEON HOLT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1515 (RBW) |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Privacy Act, 5 U.S.C. § 552a, against the United States Department of Justice

("DOJ").[1]  This matter is currently before the Court on the DOJ's motion for summary judgment.

For the reasons discussed below, the motion will be granted in part and denied in part.

### I. BACKGROUND

*A. Requests to the Executive Office for United States Attorneys ("EOUSA")*

#### 1. Request No. 08-869

The plaintiff submitted a FOIA request to the EOUSA on March 5, 2002.  Complaint

("Compl.") at 2.  He sought the following information:

---

[1]     For purposes of the FOIA, the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the Executive Branch of the Government . . ., or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  The DOJ is an executive agency to which the FOIA applies, and the Court considers the DOJ as the proper party defendant.

[A]ny and all materials for the entire central file that your agency . . . has compiled to date, relating to me, and a list of whatever information your agency[] . . . may have designated in this file or any portion thereof, and the reason for each designation, and the name of the person and his or her title requesting same.

Memorandum of Points and Authorities in Support of Motion for Summary Judgment on Behalf of Defendants Executive Office for United States Attorneys and Federal Bureau of Investigation ("Def.'s Mem."), Declaration ("Decl.") of David Luczynski ("Luczynski Decl."), Exhibit ("Ex.") A (FOIA Request) at 1.[2] EOUSA staff assigned to the portion of the request seeking access to records about himself a tracking number, Request Number ("No.") 02-857. *Id.*, Luczynski Decl. ¶ 6.

On April 11, 2007, the EOUSA advised the plaintiff that two boxes of potentially responsive records had been located at the United States Attorney's Office for the District of Columbia ("USAO DDC").[3] Compl. at 3-4; Def.'s Mem., Luczynski Decl. ¶ 8. In order to limit the potential fees incurred for searching and copying so many records, the EOUSA informed the plaintiff of his opportunity to reformulate his request. Def.'s Mem., Luczynski Decl., Ex. E (April 11, 2007 letter from W.G. Stewart II, Assistant Director, FOIA and Privacy Act Staff,

---

[2]    In addition, the plaintiff requested files pertaining to "Mark Williams, Robert Smith and notices and summaries of Det. Vivian Col[e]man, James F. Johnson & Michael Baylor." Def.'s Mem., Luczynski Decl., Ex. A at 2. Insofar as the plaintiff sought records pertaining to third parties, the EOUSA denied this portion of the request because the plaintiff provided neither written authorization from these third parties for release of any records pertaining to them, proof of their death, nor a public interest sufficient to outweigh their personal privacy interest. *Id.*, Ex. B (EOUSA correspondence regarding Request Number ("No.") 02-856) at 1.

[3]    Apparently in error, by letter dated April 18, 2008, the EOUSA advised the plaintiff that the USAO DDC located no records responsive to his FOIA request. Def.'s Mem., Luczynski Decl. ¶ 7.

EOUSA, DOJ).  The plaintiff's reformulated FOIA request read as follows:

> I was indicted [on] [November] 12, 1992, criminal No. F-8825-92.
> I am requesting the testimony of Janet, Lawence, Irving Miller, Edith
> Diane Moye, Qugustine Williams, Tracy Locks, Karen Thompson,
> Curtis Dixon, Tyrone Thomas, Rober Smith, Mark Williams, Michael
> Williams and Jake.  I am requesting everything pertaining to this
> case, with the exception of the trial transcript, Michael Baylor and
> Carolyn grand jury statements.  I am requesting the investigators [sic]
> notes of Michael Baylor, Jame[s] F. Johnson, Viv[i]an Coleman and
> Charles Culver.

*Id.*, Ex. F (April 20, 2007 reformulated FOIA request).  The EOUSA assigned the portion of

reformulated request for records about the plaintiff a new tracking number, Request No. 08-869.[4]

*Id.*, Ex. G (April 2, 2008 letter from W.G. Stewart II) at 1; *see* Compl. at 4.

On April 17, 2009, the EOUSA released to the plaintiff six pages of records in full and 20

pages of records in part, after having redacted certain information under FOIA Exemptions 7(C),

7(D), and 7(F).  Compl. at 5; Def.'s Mem., Luczynski Decl. ¶ 11.  The plaintiff appealed this

decision administratively to the DOJ's Office of Information and Privacy ("OIP"), Def.'s Mem.,

Luczyinski Decl. ¶¶ 12-13; *see* Compl. at 5, and the OIP affirmed the EOUSA's action, Def.'s

Mem., Luczynski Decl. ¶ 14.

### 2.  Request Nos. 09-1701 and 09-2392

In 2009, the plaintiff submitted a FOIA request directly to the USAO DDC.  Compl. at 6.

He sought the following information:

> [A]ny and all records, information, reports, or other files that relate
> to me specifically and/or make reference to me indirectly in regards

---

[4]     Again, the EOUSA denied the portion of the FOIA request for records pertaining
to third parties, *id.*, Luczynski Decl. ¶ 15, and denied the request because the plaintiff had not
provided "an express agreement and consent form from the third [parties], proof of death, or a
showing of how the information benefits the public interest," *id.*

> to a homicide that occurred on or about May 14, 1992, in the Northeastern secture [sic] of Washington, DC, at about 1:30 AM. The victim's name is LEWIS McCLAIN, but this request should not be construed as requesting information of [a] personal nature related to Mr. McCLAIN. I was tried and convicted of Mr. McCLAIN's murder in the Superior Court for the District of Columbia. This request is made to discover any evidence that may serve to exonerate me of Mr. McCLAIN's death, or serve to support my post-conviction litigation.

Def.'s Mem., Luczynski Decl., Ex. M (April 21, 2009 letter to the USAO DDC) at 2. The request was forwarded to the EOUSA for processing, *id.*, Ex. N (May 7, 2009 letter from A.L. Dennis, FOIA Paralegal Specialist, Civil Division, USAO DDC), and the EOUSA assigned it a tracking number, Request No. 09-1701, *see id.*, Ex. O (May 18, 2009 letter from W.G. Stewart II) at 1. The EOUSA also closed this request because the plaintiff had not submitted proof of his identity. *Id.*, Ex. O at 1-2. Upon receipt of the plaintiff's certificate of identity, and upon review of the request, EOUSA staff determined that the request, assigned Request No. 09-2392, was a duplicate, and closed it administratively. *Id.*, Luczyinski Decl. ¶¶ 18-19.

### B.  *Request to the Federal Bureau of Investigation ("FBI")*

In January 2009, the plaintiff submitted a FOIA request to the FBI's Washington, D.C. field office. Compl. at 6. He sought the following information:

> any and all records, information, reports or other files that relate to me specifically and/or make reference to me indirectly in regards to a homicide that occurred on or about May 14, 1992, in the Northeastern secture [sic] of Washington, DC, at about 1:30 AM. The victim's name is LEWIS McCLAIN, but this request should not be construed as requesting information of [a] personal nature related to Mr. McCLAIN. I was tried and convicted of Mr. McCLAIN's murder in the Superior Court for the District of Columbia. This request is made to discover any evidence that may serve to exonerate me of Mr. McCLAIN's death, or serve to support my post-conviction litigation.

Def.'s Mem., Declaration of Dennis J. Argall ("Argall Decl."), Ex. FBI-A (FOIA Request). The field office forwarded the request to FBI Headquarters ("FBIHQ") for processing. *Id.*, Ex. FBI-B (February 4, 2009 letter from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBIHQ). FBIHQ staff assigned the request a tracking number, FOIPA No. 1125838-000, *id.*, and on April 30, 2009, the agency released 24 pages of records in part, after having redacted certain information under FOIA Exemptions 6 and 7(C), *id.*, Ex. FBI-C at 1. These records originated from Washington Field Office file 88A-WF-182216. *Id.* at 2.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (internal quotation marks omitted).

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

"In opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements." *Schoenman v. FBI*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) (citations omitted). Rather, "a plaintiff pursuing an action under FOIA must establish that either: (1) the Vaughn index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents." *Id.* (citations omitted).

### B. Searches for Records Responsive to the Plaintiff's FOIA Requests

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

## 1. The EOUSA's Search

"Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office." Def.'s Mem., Luczynski Decl. ¶ 20. Because the plaintiff had been prosecuted in the District of Columbia, the EOUSA forwarded Request No. 08-869 to the FOIA Coordinator at the USAO DDC. *Id.*; Def.'s Mem., Ex. Q ("Dennis Decl.") ¶¶ 1, 3.

The USAO DDC "has a computerized docketing/case management system known as Master Index System (MI [System]) . . . [, which] allows the user to search all USAO matters using a specific name." Def.'s Mem., Ex. Q ("Dennis Decl.") ¶ 4. "The MI [S]ystem is capable of cross-referencing other related cases if such related case information is entered into the system." *Id.* Using variations of the plaintiff's name, his date of birth and criminal case number as search terms, a search of the MI System and of criminal case records stored at the Federal Records Center yielded the case file for criminal case F-8825-92. *Id.* ¶ 5; *see id.*, Ex. USAO DDC-A (Certification of Search executed on February 27, 2009).

The plaintiff counters that the EOUSA fails to "explain away the fact that in over seven

years the [p]laintiff has got nothing but 26 pages of heavily redacted documents, eight FOIA

case file numbers, and a big headache."  Plaintiff's Pro Se Opposition to the Defendants' Motion

for Summary Judgment ("Pl.'s Opp'n") at 11-12.  He attributes the extensive delay in responding

to his FOIA request, and the confusing assignment of multiple tracking numbers to what he

considered a single FOIA request, to the agency's bad faith.  *See generally id*. at 7-11.  And  he

further opines that "[t]he only thing the evidence in this case establishes is that the EOUSA

reasonably calculated to obstruct, empede [sic], and hinder the [p]laintiff's access to documents

he's entitled to have under the FOIA."  *Id.* at 12.

Notwithstanding the plaintiff's understandable impatience and exasperation with the

EOUSA's delay in responding to his FOIA request, the plaintiff points to no evidence in the

record to undermine the credibility of the defendant's supporting affidavits regarding the scope

and method of the search conducted by the USAO DDC.  On this record, the Court concludes

that the methods by which the EOUSA and the USAO DDC staff searched for responsive

records were reasonable under the circumstances.  The plaintiff's obvious mistrust after waiting

nearly seven years for a substantive response to his FOIA requests, absent support for his

allegations of agency bad faith, does not render the searches inadequate.  *See, e.g., Judicial*

*Watch, Inc. v. U.S. Dep't of Health & Human Servs.,* 27 F. Supp. 2d 240, 244 (D.D.C. 1998)

(concluding that the "plaintiff's speculation as to the trustworthiness of the Clinton

administration and [the agency's] failure to release documents that plaintiff apparently expected

to be released is insufficient as a matter of law to defeat defendant's motion for summary

judgment as to the adequacy of the FOIA search").

2. The FBI's Search

With its Central Records System ("CRS"), the FBI maintains "administrative, applicant, criminal, personnel, and other files" acquired and compiled in the course of conducting "its mandated law enforcement responsibilities." Def.'s Mem., Argall Decl. ¶ 12. The CRS is organized into a numerical sequence of files which are categorized according to subject matter, and a file's subject matter "may relate to an individual, organization, company, publication, activity, or foreign intelligence matter." *Id.* "Certain records in the CRS are maintained at FBIHQ," while others are maintained at the pertinent field office. *Id.*

The CRS is accessed through the use of alphabetically arranged General Indices. *Id.* ¶ 13. There are two categories of General Indices: "main" entries and "reference" entries. *Id.* The former "carr[y] the name corresponding with a subject of a file contained in the CRS," and the latter (also known as cross-references) "generally [are] only a mere mention or reference to an individual . . . or other subject matter[] contained in a document located in another 'main' file on a different subject matter." *Id.* The FBI "uses the CRS to conduct searches that are likely to yield documents responsive to FOIA and Privacy Act requests," and such searches are conducted using the Automated Case Support System ("ACS System"). *Id.* ¶ 12.

The CRS System "cannot electronically query the case files for data, such as an individual's name or social security number," and therefore "the required information is duplicated and moved to the ACS [System] so that it can be searched." Def.'s Mem., Argall Decl. ¶ 15. The "ACS [System] consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id.* ¶ 16. These three applications are Investigative Case Management ("ICM"), Electronic Case File ("ECF"), and Universal Index ("UNI"). *Id.* The ICM allows for the

opening, assignment, and closing of investigative and administrative cases, and for the assignment and tracking of leads. *Id.* ¶ 16(a). When a case is opened, it is assigned a Universal Case File Number which is used by the FBIHQ and all field offices conducting or assisting in an investigation. *Id.* The first three digits of the assigned number correspond to the classification for the type of investigation; the next characters of the number (which are actually letters) designate the field office of origin; and the last series of digits comprising the number denote the individual case file number for a particular investigation. *Id.*

The ECF "is the central electronic repository for the FBI's official text-based documents," *id.* ¶ 16(b), and UNI provides "a complete subject/case index to all investigative and administrative cases," *id.* ¶ 16(c). The investigative Special Agent assigned to work on an investigation, the Supervisory Agent in the field office conducting the investigation, and the Supervisory Agent at FBI headquarters determine whether to index names other than by subjects, suspects, and victims. *Id.* ¶ 17. Only information deemed "pertinent, relevant, or essential for future retrieval" is indexed. *Id.* Otherwise, FBI files "would . . . be merely archival in nature." *Id.* Thus, "the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual." *Id.*

Notwithstanding the FBI's policy "to search for and identify only 'main' files responsive to FOIA/Privacy Act requests at the initial stage," FBI staff also "conducted a second search of the CRS to locate cross-references responsive to [the] plaintiff's request." Def.'s Mem., Argall Decl. ¶ 18. Using variations of the plaintiff's name as search terms, the search located "main file 88A-WF-182216 (HQ) as potentially responsive." *Id.* Also located were "four files in which the

10

plaintiff is mentioned as a cross-reference only," *id.*, and the FBI has processed three of these cross-reference files. *Id.* "The fourth cross-reference file consists of three pages which originated within another federal government agency," *id.*, the Federal Bureau of Prisons ("BOP"), *id.* ¶ 19. The FBI referred these three pages to the BOP for its direct response to the plaintiff's FOIA request. *Id.*

Plaintiff raises no particular objection to the FBI's search for responsive records. However, he notes that neither declaration indicates that the declarant personally conducted a search, or that each declaration is based on the declarant's personal knowledge of the handling of his FOIA requests. Pl.'s Opp'n at 15-16. In this case, however, each declarant has stated his or her familiarity with the component's procedures for handling FOIA and Privacy Act requests, and each declaration is based on the declarant's review of the component's official files. *See* Def.'s Mem., Luczynski Decl. ¶¶ 2-3, Dennis Decl. ¶ 2, & Argall Decl. ¶ 3. The Court may accept the declaration of a person who did not conduct the search itself "if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (internal quotation marks and citations omitted). Thus, the declarant need not have conducted the search himself. *See Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 66 (D.D.C. 2008) (noting that an agency's supporting "affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.").

On this record the Court finds that the FBI has established that its search for records responsive to the plaintiff's FOIA request satisfies the requirements of the FOIA.

## C.  Analysis Under the Privacy Act

In relevant part, the Privacy Act provides:

> The head of any agency may promulgate rules . . . to exempt any system of records within the agency from [certain parts of the Act] . . . if the system of records is . . . maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose  of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

"The EOUSA's Criminal Case Files (Justice/USA-007) are contained in a Privacy Act System of Records," and "the Attorney General has promulgated rules exempting these records from the Privacy Act's access provisions as authorized by 5 U.S.C. § 552a(j)(2)."  Def.'s Mem., Luczynski Decl. ¶ 23; *see* 28 C.F.R. § 16.81(4) (2009).  Similarly, the FBI's CRS "is a component of the FBI's CRS Privacy Act Records System," and its records "are exempt from disclosure pursuant to 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.96 (2003)."  Def.'s Mem., Argall Decl. ¶ 25.  However, both the EOUSA and the FBI processed "the documents responsive to the plaintiff's request . . . under the access provisions of the FOIA to achieve maximum disclosure."  *Id.*

## D.  FOIA Exemptions

The DOJ bears the burden of justifying a decision to withhold records or portions of records that are responsive to a FOIA request. *See* 5 U.S.C. § 552(a)(4)(B). However, to establish justification for the withholding of responsive records the agency's declarants must describe the records withheld, and show that the records fall within the claimed exemption or exemptions. *See Canning v. U.S. Dep't of Justice*, 848 F. Supp. 1037, 1043 (D.D.C. 1994).

1. Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The phrase "personnel rules and practices" is interpreted to include not only "minor employment matters" but also "other rules and practices governing agency personnel." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc). The "information need not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

Exemption 2 applies if the information that is sought meets two criteria. First, such information must be "used for predominantly internal purposes." *Crooker*, 670 F.2d at 1073; *see Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1986). Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes and regulations are protected by the so-called 'high 2' exemption." *Schiller v.*

*NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id*. at 1208. If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

The FBI has redacted from 57 pages of records "the secure website address of the FBI's Law Enforcement Online ("LEO") computer system." Def.'s Mem., Argall Decl. ¶ 29. The FBI declarant describes the LEO system as "a controlled-access communications and information-sharing data repository" which "provides an Internet-accessible focal point for certain electronic communications and information sharing for the international, federal, state, local and tribal law enforcement agencies." *Id.* Further, the declarant states that the website addresses "relate to the internal practices of the FBI in that they are utilized by FBI personnel during the performance of their jobs." *Id.* Lastly, the declarant states that disclosure of the secure website address "could impede the FBI's effectiveness." *Id*. Plaintiff raises no objection to the FBI's decision to withhold information under Exemption 2. *See* Pl.'s Opp'n at 13.

The declaration establishes that the website address falls within the scope of Exemption 2, and the Court concludes that this information properly has been withheld.

### 2. Exemption 6

Exemption 6 of the FOIA protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The FBI's practice "is to assert Exemption [6] in conjunction with Exemption [7(C)]," Def.'s Mem., Argall Decl. ¶ 30 n.5, and review of the redacted records

shows that the FBI has invoked the exemptions in conjunction with each other in all instances related to the plaintiff's FOIA request, *see id.*, Ex. FBI-G (*Vaughn* index).[5] As will be discussed in the next section, the Court concludes that all the records responsive to the plaintiff's request were compiled for law enforcement purposes. The Court will therefore analyze the withholding of this law enforcement related information under Exemption 7(C), and it need not determine whether this same information properly has been withheld under Exemption 6.[6] *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992).

### 3. Exemption 7

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).

### a. Law Enforcement Records

In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement

---

[5] In addition, the FBI has redacted Social Security numbers and dates of birth wherever they appear in these records pursuant to Rule 5.2 of the Federal Rules of Civil Procedure and to Local Civil Rule 5.4(f). *See generally* Def.'s Mem., Argall Decl., Ex. FBI-G.

[6] Similarly, where the EOUSA has withheld information under Exemption 7(F) in conjunction with Exemption 7(C), *see* Def.'s Mem., Luczynski Decl. ¶¶ 44-45, the Court will conduct its analysis under Exemption (C) only.

proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

Records responsive to the plaintiff's FOIA request to the FBI were generated when the District of Columbia Metropolitan Police Department ("MPD") requested assistance from the FBI's Washington Field Office ("WFO") in apprehending the plaintiff, for whom the Superior Court of the District of Columbia had issued a felony arrest warrant "for a shooting death which had occurred in Washington, D.C." Def.'s Mot., Argall Decl. ¶ 5. On August 20, 1992, "[t]he plaintiff was arrested by an FBI/MPD Joint Fugitive Apprehension Team." *Id.* Some of the responsive records "pertain to the FBI's investigation of [the] plaintiff while he was a fugitive from justice" while others "pertain to an FBI investigation at a prison facility, and to entry of the plaintiff's criminal history into the FBI's [Violent Criminal Apprehension Program ("ViCAP")] database." *Id.* ¶ 33; *see also id.* ¶¶ 27-28.

The United States Attorney for the District of Columbia prosecuted the plaintiff's criminal case. *See* Def.'s Mem., Luczynski Decl. ¶ 24. The EOUSA records responsive to the plaintiff's FOIA request are maintained in a criminal case file captioned *United States v. Marvin Holt*, No. F-8825-92. *Id.* ¶ 21. This "criminal case file pertains to the criminal investigation of [the plaintiff] for violation of federal controlled substance laws, for felony murder, and for various firearms violations," and the records therein "were complied for criminal law enforcement purposes by the USAO DDC, which performs as its principal function activities related to the enforcement of criminal laws." *Id.* ¶ 24.

As for the BOP, it is considered a law enforcement agency, *see Quinto v. U.S. Dep't of Justice*, No. 09-2068, 2010 WL 1875623, at *3 (D.D.C. May 11, 2010), and its declarant

explains that its records responsive to the plaintiff's FOIA request "pertained to the investigation of an inmate-on-inmate assault," Def.'s Mem., Declaration of Ron Hill ¶ 4.  It appears that these records are created in connection with the BOP's responsibility to "protect[] inmates, staff, and the community," *Butler v. Fed. Bureau of Prisons*, No. 05-643, 2005 WL 3274573, at * 3 (D.D.C. Sept. 27, 2005), and, therefore relate to the enforcement of federal law.

Both of these two DOJ components readily meet the threshold for Exemption 7 status, i.e., that the records responsive to the plaintiff's FOIA requests were compiled for law enforcement purposes.  The records, therefore, fall within the scope of Exemption 7.

b.  Public Domain Doctrine

Before proceeding with its analysis of the withholding of the law enforcement records, the Court will first address the plaintiff's assertion that all the records withheld under Exemption 7 must be released "because the records have been released into the public domain through judicial proceedings and media outlets."  Pl.'s Opp'n at 13.  Under the public domain doctrine, records which otherwise may be exempt from disclosure under the FOIA "lose their protective cloak once disclosed and preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  "[W]here information requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes.'"  *Id.* (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)).  In order to obtain the records he requests, the plaintiff "has the burden of showing that there is a permanent public record of the exact [records] he wishes."  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992); *see Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

As support for his public domain doctrine  argument, the plaintiff points only to his own

affidavit, which states that "the government witnesses testified in open court to all of the facts and circumstances related to the criminal case," Plaintiff's Pro Se Opposition to the Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"), Affidavit of Marvin Leon Holt ¶ 14, and that "local newspapers . . . published several news articles related to [his] murder and drug charges trial," *id.* ¶ 15. The plaintiff's affidavit does not suffice, and the plaintiff presents no other document or other evidence to meet his "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130. Accordingly, the Court concludes that disclosure is not warranted under the public domain doctrine. *See Lieff, Cabraser, Heimann & Bernstein, LLP v. U.S. Dep't of Justice*, No. 09-00157, 2010 WL 1063785, at *5 (D.D.C. Mar. 24, 2010) (rejecting public domain doctrine argument where the plaintiff's "several exhibits . . . including news reports, corporate statements, and a court filing" were "essentially devoid of any specific explanation of the overlap between the information in these exhibits and in the records [the plaintiff] seeks").

### c. Exemption 7(C)[7]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

---

[7] The BOP has withheld "the identities and personal information about third party individuals." Def.'s Mem., Decl. of Ron Hill ("Hill Decl.") ¶ 5. Its declarant merely parrots the language of the FOIA, and it is not clear from review of the redacted records themselves the basis for withholding certain information appearing on the second of the three pages. A substantial portion of the information on that page has been redacted without any notation on each redacted portion identifying the exemption or exemptions claimed. Morever, insofar as the BOP relies on Exemption 7(C) in conjunction with Exemption 7(F), the declaration offers little explanation as to how disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). For these reasons, the Court will deny in part the defendant's summary judgment motion.

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773).  It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.  *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

i.  Law Enforcement Agents, Officers and Support Personnel

The EOUSA has withheld under Exemption 7(C) "the names, signatures and badge numbers of local law enforcement officers and support employees who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this investigation."  Def.'s Mem., Luczynski Decl. ¶ 28.  The EOUSA declarant explains that any publicity "regarding any particular investigation conducted by a state or federal law enforcement agent may seriously impair [his or her] effectiveness in conducting future investigations."  *Id.* He notes that these agents "conduct official inquiries into violations of various criminal statutes

and come into contact with all strata of society" whenever they, for example, "conduct searches and make arrests, both of which result in reasonable, but . . . serious disruptions in the lives of individuals." *Id*. The declarant opines that these individuals might "carry a grudge which may last for years, and [may] seek revenge on the agents involved in the investigation." *Id*. He therefore concludes that disclosure of their identities and the publicity associated with such disclosure "could trigger hostility towards the [agents]." *Id.*

Similarly, under Exemption 7(C) the FBI has withheld the names of and identifying information (such as Social Security numbers) about the Special Agents "responsible for conducting, supervising, and/or maintaining the investigative activities reported in the documents concerning [the] plaintiff and others," Def.'s Mem., Argall Decl. ¶ 34, in addition to local law enforcement employees, *id*. ¶ 35, and commercial employees who assisted the FBI by entering data into the ViCAP database, *id*. ¶ 38. The FBI declarant explains that FBI Special Agents are not assigned to a particular investigation by choice, and that "[p]ublicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations." *Id*. ¶ 34. Withholding their identities under Exemption 7(C), the declarant asserts, protects them "from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI," and protects them from any hostility which may be triggered by the disclosure of their identities. *Id*. The declarant applies this same rationale to local law enforcement employees, explaining that disclosure of their identities "could subject them as individuals to unnecessary and unwelcome harassment" or otherwise could make them "prime target[s] for compromise if their identities were known." *Id.* ¶ 35.

Redaction of the names of federal, state and local law enforcement personnel and support staff under circumstances similar to those described here has routinely been upheld. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in concealing the identities of government officials where disclosure "could subject them to annoyance or harassment in either their official or private lives"); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996). In accordance with these rulings, the Court concludes that the EOUSA and the FBI properly withheld the names of and identifying information about federal and local law enforcement officers and support personnel under Exemption 7(C).

ii. Other Third Parties Mentioned in Law Enforcement Records

The EOUSA has withheld "the name[s] and/or identifying information pertaining to individuals who assisted the government in its investigation and prosecution of [the plaintiff] by providing information concerning the murder investigation," Def.'s Mem., Luczynski Decl. ¶ 30, "the names [and] home telephone numbers of those [individuals] who are only incidentally mentioned in these records," *id*. ¶ 33, as well as "the identities and/or personal and non-public information concerning third-party individuals in whom federal and/or local law enforcement agencies had an investigative interest," *id*. ¶ 34. Likewise, the FBI withholds the "name, address, telephone number, date of birth and nickname of a victim of a crime," Def.'s Mem., Argall Decl. ¶ 36, the names of and identifying information about third parties of investigative interest either to the FBI or to other law enforcement agencies, *id*. ¶ 37, and, lastly, "the name

and title of a commercial employee who cooperated and provided assistance to the FBI by entering data into the ViCAP database," *id.* ¶ 38.

Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs.*, 926 F.2d at 1205-06. The exemption "takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (internal quotation marks omitted). Accordingly, "[t]he D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants." *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)).

The plaintiff does not assert, and the Court cannot identify, a public interest of such significance that it outweighs the privacy interests of the third parties mentioned in the records responsive to the plaintiff's FOIA requests. Furthermore, his assertion that "the passage of time has substantially eroded the records['] law enforcement exemption status," Pl.'s Opp'n at 14, is unavailing, because an individual's privacy interest does not diminish with the "passage of time." *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990).

For all of the above reasons, the Court finds that the DOJ's decision to withhold the names of and identifying information about law enforcement officers, support personnel,

witnesses, persons of investigative interest, and other third parties whose names happen to appear in these law enforcement records is proper. *See, e.g., King v. U.S. Dep't of Justice*, No. 08-1555, 2010 WL 935420, at *4 (D.D.C. Mar. 17, 2010) (upholding nonproduction of "the names and other identifying information of third parties, including suspects, co-defendants, and confidential sources of information"); *Sellers v. U.S. Dep't of Justice*, No. 08-0840, 2010 WL 545939, at *7 (D.D.C. Feb. 17, 2010) (withholding the identities of FBI Special Agents who testified at the plaintiff's criminal trial held proper); *Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 256 (D.D.C. 2009) (sustaining the withholding of "[t]he names and personal information of the U.S. Coast Guard crew members, which may include addresses, passport numbers and other personal data" (internal quotation marks omitted)).

### d. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis, *id*. at 179-80, and a presumption of confidentiality arises only in narrowly defined circumstances, *id.* at 181 ("For example, when circumstances such as the nature of the crime

23

investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption.").  Moreover, as the District of Columbia Circuit held, "[a] source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting *Landano*, 508 U.S. at 170-74).

#### *i.*  Eyewitnesses to the Murder for which the Plaintiff was Convicted

According to the EOUSA it has withheld under Exemption 7(D) "information provided by eyewitnesses to the murder for which [the plaintiff] was prosecuted" in circumstances under "which the assurance of confidentiality could be reasonably inferred."  Def.'s Mem., Luczynski Decl. ¶ 39.  These sources are not named, and they appear in the EOUSA records only as "W-1" and W-2."  *Id.* ¶ 41.  They "had direct contact with the subject of the criminal investigation" and thus were able to "provide[] details as to their criminal conduct," in addition to supplying detailed information about the murder for which the plaintiff has been convicted.  *Id.*  The EOUSA declarant states that these witnesses "would likely become targets of harassment or other forms of reprisal" if their identities or the information they provided were released.  *Id.* ¶ 37.  Moreover, he states that disclosure "would likely produce a disastrous impact upon the ability to ever obtain . . . investigative information again, as it would create a chilling effect upon the free-flow of information essential to resolve criminal prosecutions."  *Id.*

Recognizing the "the violence and danger that accompany the cocaine trade," *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329-30 (D.C. Cir. 2000), the District of Columbia Circuit has found that "a source of information about a conspiracy to distribute cocaine typically

faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential," *id.* at 1330 (approving the withholding of the identity of a source who supplied information about a conspiracy to distribute crack and powder cocaine). Similarly, courts have found that disclosure of the identities of or information provided by confidential sources is not required in circumstances where the subject of the investigation is known to have committed serious or violent offenses and where the sources are at risk of retaliation, harassment or bodily harm. *See Williams*, 69 F.3d at 1159-60 (concluding that sources who spoke to the FBI regarding a nationalist organization "suspected . . . of committing . . . rebellion or insurrection, seditious conspiracy, and advocating the overthrow of the government," and had demonstrated its "willingness to use violence against its enemies," did so under an implicit assurance of confidentiality); *Shores v. FBI*, 185 F. Supp. 2d 77, 84 (D.D.C. 2002) (approving the withholding of the identities of and identifying information about three cooperating witnesses who had knowledge of the murder for which plaintiff was convicted). It is equally reasonable in this case to conclude that W-1 and W-2 provided information to law enforcement with an expectation that their identities would not be disclosed. This information is therefore properly withheld under Exemption 7(D).

*ii*. Confidential Source Material in the ViCAP File

The FBI withholds certain "confidential source material contained in the ViCAP file, as well as in a reference file concerning a Racketeering Enterprise Investigation ("REI") of gang activity." Def.'s Mem., Argall Decl. ¶ 40. Here, the FBI declarant explains that a local law enforcement agency supplied information to ViCAP under an express assurance of confidentiality, as is underscored by the FBI's Rules of Behavior for the ViCAP Web. *Id.* These

rules clearly state that the ViCAP Web database is a confidential system, the unauthorized access to which is prohibited. *Id.* Moreover, the declarant states that the FBI "solicits and receives information regularly from state, local, and foreign agencies and authorities," and that cooperation from these identities depends on a "mutual understanding that the information provided by [these sources] will be held in confidence by the FBI, and not released pursuant to FOIA and Privacy Act requests." *Id.*

Where a law enforcement agency relies on express assurances of confidentiality to justify its decision to withhold information under Exemption 7(D), it must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.* In addition to individual sources, a law enforcement agency itself may be a confidential source for purposes of Exemption 7(D). *See, e.g., Founding Church of Scientology of Washington, D.C., Inc. v. Levi*, 579 F. Supp. 1060, 1063 (D.D.C. 1982) (approving the withholding from law enforcement records the identities of state, local and foreign law enforcement agencies), *aff'd*, 721 F.2d 828 (D.C. Cir. 1983); *Thomas v. U.S. Dep't of Justice*, 531 F. Supp. 2d 102, 111 (D.D.C. 2008) (approving the withholding of a report provided to the EOUSA by the Metropolitan Police Department which stated, "[t]his report is the property of the Metropolitan Police Department. Neither it nor its contents may be disseminated to unauthorized personnel."); *Meserve v. U.S. Dep't of Justice*, No. 04-1844, 2006 WL 2366427,

at *10 (D.D.C. Aug. 14, 2006) (concluding that the State of Ohio provided information regarding the plaintiff's criminal history under an implied assurance of confidentiality); *see also Code v. FBI*, No. 95-1892, 1997 WL 150070, at *7 (D.D.C. Mar. 26, 1997) (approving the withholding under Exemption 7(D) of information provided by local law enforcement authorities to the FBI's National Center for the Analysis of Violent Crime as a part of its ViCAP program).

The plaintiff raises no specific objection to the withholding of information under Exemption 7(D). Accordingly, based on the defendant's supporting declarations, the Court concludes that both the EOUSA and the FBI properly have withheld the information described above under Exemption 7(D).

### e. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. *See, e.g., Morley v. CIA*, 453 F. Supp. 2d 137, 157 (D.D.C. 2006) (approving the withholding of information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"), *rev'd on other grounds*, 508 F.3d 1108 (D.C. Cir. 2007); *Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (approving the withholding of

polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart FBI's strategy); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair its future effectiveness and, "within the context of the documents at issue could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992). Moreover, as stated previously, under Exemption 2, so-called "high 2" exempt information encompasses "[p]redominantly internal documents the disclosure of which would risk circumvention of agency statutes." *Schiller*, 964 F.2d at 1207.

Based on Exemptions 2 and 7(E), the FBI has withheld information contained in a ViCAP file. Def.'s Mem., Argall Decl. ¶¶ 28, 42; *see id.*, Ex. FBI-G at 29-86 (deleted page information sheets). The FBI's Critical Incident Response Group, National Center for Analysis of Violent Crime, Behavior Analysis Unit's Violent Criminal Apprehension Program ("ViCAP") "is a law enforcement oriented behavioral science and data-processing center designed to provide assistance to local, state, federal and foreign law enforcement agencies investigating unusual, bizarre, and/or repetitive violent crimes." Def.'s Mem., Argall Decl. ¶ 28. "ViCAP collects, collates, and analyzes crimes of violence, specifically murder," *id.*, and information it processes "contains detailed administrative, investigative and behavior-oriented data[,]" such as "modus operandi, crime scene information, and types of trauma inflicted on the victim," *id.* ¶ 42.

The FBI declarant states that information in ViCAP "relates solely to the FBI's internal practices" Def.s' Mem., Argall Decl. ¶ 28, and that ViCAP "is utilized for law enforcement

investigations," *id.* ¶ 42.  He asserts that disclosure of information in the ViCAP file would "reveal the characteristics and data . . . collected and tracked using this system [and therefore] could allow offenders to circumvent discovery."  *Id.* ¶ 28; *see id.* ¶ 42.  Thus, if a criminal knew the specific information collected and the origins of such information, he or she "would then be able to avoid detection by modifying or avoiding certain behavior/activities connected with his/her criminal conduct."  *Id.* ¶ 28.  In addition, the declarant explains that "the FBI will use the same or similar techniques and/or assistance to bring future investigations to successful conclusions," *id.*, and that "release of the ViCAP analytical techniques would reduce their effectiveness," *id.* ¶ 42.  According to the declarant, ViCAP's techniques are not well known to the public.  *Id.*

Despite these representations, the plaintiff argues that the defendant "does [not] even attempt to make a showing as required by law," as it fails "to show that the particular law enforcement technique or procedure is not generally known to the public" and to "describe the general nature of the techniques[.]"  Pl.'s Opp'n at 14.  However, absent a showing by the plaintiff that rebuts the declarant's assertion that ViCAP's techniques are not well known to the public, the Court presumes that the declaration is made in good faith and therefore accepts the agency's representation on this point.  In addition, the plaintiff's assertion that the declarant has not described generally the nature of the ViCAP techniques, *id.*, is meritless, as the declaration explains the type of data collected and the purpose of collecting this data.

### *E. Segregability*

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-

exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see*

*Stolt-Nielsen Transp. Group, Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008);  *Trans-*

*Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999).

The Court therefore errs if it "simply approve[s] the withholding of an entire document without

entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons*, 927

F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611

F.2d 738, 744 (9th Cir. 1979)).

The plaintiff argues that the DOJ cannot have disclosed all reasonably segregable

material because so few pages have been released and because so much information on these

pages has been redacted.  *See* Pl.'s Opp'n at 16-17.  Unless the Court conducts an *in camera*

inspection of all the documents deemed responsive to his FOIA requests, the plaintiff states that

he "is compelled . . . to [accept] the Defendants' bald assertions on face value – something [he]

admittedly has a hard time doing after 7-years of the Defendants' shenanigans."  *Id.* at 17.

The Court will deny plaintiff's request for *in camera* review.  Based on a review of  the

defendant's supporting declarations and exhibits, the Court finds that they adequately "specify in

detail which portions of the document[s] are disclosable and which are allegedly exempt."

*Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## III.  CONCLUSION

For the reasons outlined above, the Court concludes that the FBI and the EOUSA

conducted reasonable and adequate searches for records responsive to the plaintiff's multiple

FOIA requests, that these components properly have withheld records or portions of records

under Exemptions 2, 7(C), 7(D), and 7(E), and that they have released all reasonably segregable

material.  In these respects, the defendant's summary judgment motion is granted.  However, because the defendant has not established that the BOP has fulfilled its obligations under the FOIA, its motion is denied in part without prejudice.  The defendant will be directed to file a renewed motion for summary judgment based on additional undisputed facts or by presenting additional legal arguments.  An Order accompanies this Memorandum Opinion.


_____/s/_____
REGGIE B. WALTON
United States District Judge

DATE:  August 26, 2010